**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
———————————————————————

**RACHELLE GALLAGHER and**
**MARK KACHADOURIAN,**

                                        **Plaintiffs,**

        **v.**                                                **3:18-CV-01476**

**THE UNIFIED COURT SYSTEM**
**OF THE STATE OF NEW YORK and**
**RICHARD MILLER, II, individually and in**
**his official capacity,**

                                        **Defendants.**
———————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                        **DECISION and ORDER**

**I.      INTRODUCTION**

        Plaintiffs Rachelle Gallagher ("Gallagher") and Mark Kachadourian

("Kachadourian")(collectively, "Plaintiffs"), commenced this employment discrimination

action against Defendants Unified Court System of the State of New York ("UCS") and

Richard Miller, II, individually and in his official capacity ("Miller).  Plaintiffs' complaint

seeks damages for defendants' purported violations of Title VII, the New York State

Human Rights Law, 42 U.S.C. § 1983, and New York common law.  The allegations arise

from plaintiffs' employment at the Broome County Family Court courthouse.  Defendant

Miller was, at relevant times, an elected Broome County Family Court Judge.  He has

since been removed from that position.  *See Matter of Miller*, 35 N.Y.3d 484, 491, 158

N.E.3d 87, 92 (NY 2020).  Kachadourian and Gallagher were hired by the UCS and assigned to work in Miller's chambers beginning in January 2015. Compl., Dkt. No. 1, ¶ 20.   Kachadourian served as a Court Attorney and Gallagher served as a Secretary.  *See generally*, *id.*  Plaintiffs contend that between 2015 and June 2017 they complained to the Chief Clerk of the Broome County Family Court on at least fifty (50) separate occasions regarding Miller's harassment and abuse, but that "Defendants did not investigate or take any corrective action with respect to Plaintiffs' complaints, nor inform them of their rights under the Original Sexual Harassment Policy." *Id.* ¶ 65.  Plaintiffs maintain that "the failure to initiate any formal complaint procedure or otherwise abide by the Original Sexual Harassment Policy was due to a *de facto* policy, practice and custom by UCS of suppressing complaints of sexual harassment at their source by, among other things, discouraging the filing of formal complaints, minimizing and normalizing the behavior of harassers, withholding information from complainants, and intentionally failing to report acts of harassment." *Id.* ¶ 67.  Plaintiffs contend that by the time the State of New York, through its Office of the Inspector General, finally completed an investigation into Miller's conduct, Plaintiffs "had unnecessarily been subjected to over two and a half years of severe and pervasive sexual harassment and abuse by Judge Miller." *Id.*  ¶ 72.  Plaintiff assert that due in part to their complaints about Miller's harassment and the possible resulting legal ramifications to UCS, UCS promulgated "revisions" to the Original Sexual Harassment Policy that substantially weakened protections for victims of sexual harassment and discrimination. *Id.* ¶¶ 75-82.  Plaintiffs also contend that they were retaliated against by UCS because of their complaints against Miller, including being given

substantially diminished responsibilities, reduced workloads, less substantive work, and were isolated from their coworkers. *Id.* ¶¶ 83-86. Plaintiffs also complained about threats of physical harm from a coworker, and threats from one of Miller's friends within the courthouse, but that inadequate actions were taken by UCS to address these threats. *Id.* ¶¶ 87-98.

Discovery in this matter has been protracted due, in part, to numerous discovery disputes, primarily between Plaintiffs and UCS. *See* Owens Decl., Dkt. No. 113-2, ¶ 3. One such dispute concerned the disclosure of a UCS internal Excel spreadsheet that tracked workplace conduct complaints, including sexual harassment complaints made by or against UCS employees. Plaintiffs learned of the existence of the Excel spreadsheet during a deposition of former Deputy Chief Administrative Judge Michael Coccoma (retired). *Id.* ¶ 4. After the parties' efforts to resolve the discovery dispute regarding disclosure of the Excel spreadsheet and related material, the Hon. Miroslav Lovric, United States Magistrate Judge, became involved. *Id.* ¶ 7. Following an April 23, 2021 telephonic conference with the parties, Judge Lovric ordered that "Defendant UCS shall deliver to the Court, for an *in camera* review, all the materials, along with any privilege log, as specifically identified during the 4/23/2021 hearing." *See* Dkt. No. 101. In response to this order, UCS provided to the Court, *inter alia*, two spreadsheets and related material consisting of approximately 3000 documents. *See* Buckley Decl., Ex. A, Dkt. No. 125-1, a CM/ECF pp. 4 -8; *see also* Buckley Decl., Dkt. No. 125, ¶ 4. At a hearing conducted on April 30, 2021, Judge Lovric directed UCS to release in unredacted format approximately 46 of the 72 files he reviewed, and recommended ways the parties could agree to allow

3

disclosure of some of the remaining material so as to not run afoul of his determination (discussed more fully below). *See* April 30, 2021 Hearing Transcript, Dkt. No. 109 ("Hearing Trans.").

Plaintiffs now appeal Judge Lovric's Order, asking that it be reversed to the extent UCS is not required to produce certain documents in response to Plaintiffs' demands for production.  Dkt. No. 113.  The Memorandum of Law submitted in support of Plaintiffs' Notice of Objections/Appeal clarifies that the documents Plaintiffs seek to compel UCS to produce consist only of documents pertaining to sexual harassment and retaliation; Plaintiffs are not seeking disclosure of other types of misconduct that may be the subject of the withheld documents. *See* Dkt. No. 113-1, a p. 9.  Defendant UCS opposes the appeal. Dkt. 125.  For the reasons that follow, the appeal is denied but the Court remands the matter to Judge Lovric to determine whether some of the withheld files could properly be disclosed under the Stipulated Protective Order in this case, Dkt. Nos. 39, 74, or in redacted form.

## II.    STANDARD OF REVIEW

When a party objects to a magistrate judge's non-dispositive order, the district court must review the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "A decision is clearly erroneous where 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Collymore v. City of New York*, No. 16-CV-8270-LTS-OTW, 2021 WL 2269538, at *1 (S.D.N.Y. June 3, 2021)(quoting *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004)(citation omitted)). "An

order is 'contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Knitting Fever, Inc. v. Coats Holding Ltd.*, No. 05-CV-1065 (DRH) (MLO), 2005 WL 3050299, at *3 (E.D.N.Y. Nov. 14, 2005) (internal quotation marks and citation omitted)). "This standard of review is 'highly deferential'; 'magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused.'" *Id.* (quoting *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2013) (internal quotation marks and citation omitted)).  "Such deference is particularly appropriate where, as here, a party challenges a magistrate judge's resolution of the parties' discovery disputes." *Id.* (citing *Marquez v. Hoffman*, No. 18-CV-7315 (ALC) (GWG), 2019 WL 5940151, at *2 (S.D.N.Y. Oct. 25, 2019) ("Because [a] magistrate judge is best qualified to judge the entire atmosphere of the discovery process ... [her] rulings on discovery matters are entitled to substantial deference.") (internal quotation marks and citation omitted); *Walker v. Carter*, No. 12-CV-5384 (ALC) (RLE), 2016 WL 6820554, at *2 (S.D.N.Y. Feb. 4, 2016) ("A magistrate judge has broad discretion to manage discovery disputes.")).  This standard imposes a heavy burden on the objecting party, and only permits reversal where the district court determines that the magistrate judge "abused his broad discretion over resolution of discovery matters." *Labarge v. Chase Manhattan Bank, N.A.*, 1997 WL 583122, at * 1 (N.D.N.Y. Sept. 3, 1997); *see J. G. Peta, Inc. v. Club Protection, Inc.*, 2001 U.S. Dist. LEXIS 6563 *2 (N.D.N.Y. May 17, 2001) ("Magistrate judges have broad discretion in resolving non-dispositive matters and a party seeking to overturn a discovery order bears a heavy burden.").

III.    **DISCUSSION**

    **a. Judge Lovric's Decision**

In advance of the April 30, 2021 hearing,

UCS submitted to the Court for *in camera* review in electronic format the following documents which were either withheld from the parties or produced with redactions:

a) Two excel spreadsheets of all UCS Inspector General ("IG") matters maintained by the office of the Deputy Chief Administrative Judge for all non-NYC Districts ("DCAJ") - one for closed matters (100 pages), and one for open matters (11 pages) - together with approximately 3,000 documents referenced in the spreadsheets which were linked electronically to the spreadsheets and provided to the Court for in camera review on a thumb-nail drive;

b) Documents relating to a complaint made to non-party Cheryl Lidell Obenauer by an employee of Broome County Family Court regarding a Judge and [court attorney] of that Court viewing graphic images in the workplace of a nude woman running;

c) Draft documents relating to the sexual harassment policy as circulated in November 2017, and the cover letter relating to that policy, and all attachments;

d) An IG report relating to an investigation of non-party Eric Burlingame, about whom Plaintiff Rachelle Gallagher complained and an IG report about non-party Diane Llewellyn, about whom Plaintiff Rachelle Gallagher complained.

Buckley Decl. ¶ 4.

These materials were produced to the Court under cover of letter dated April 26,

2021. *See* Buckley Decl., Ex. A.  The letter was copied to all parties. *Id.*  This letter

indicates that it "is accompanied by an e-mail to the Court with a password-protected link

by which we are providing to the Court the documents withheld by UCS on grounds of

relevance.  All such documents provided for *in camera* review were <u>also</u> withheld because

they are either (1) privileged (or otherwise highly sensitive) and/or (2) the burden

6

associated with their production would be disproportionate to any value they could have in this case. Those documents are indicated by the file name under which they were uploaded." *Id.* at CM/ECF p. 4 (emphasis added).  The cover letter then goes on to indicate that it "is accompanied by an e-mail to counsel for plaintiffs and defendant Miller with a password-protected link by which we are producing to the parties certain materials located by UCS and requested by plaintiffs which we previously withheld as irrelevant to the claims here -- in many cases those requests also call for information and documents equally available to the plaintiffs as to UCS. However, for the sake of efficiency, and avoiding a waste of the Court's time, we are producing these materials to the parties." *Id.* The cover letter also indicates that "we are also supplying to the parties additional documents we located in the course of assuring that we had produced relevant, responsive non-privileged materials relating to the spreadsheets maintained by the Office of the Deputy Chief Administrative Judge for judicial districts outside New York City. Those documents required redactions solely for the purpose of removing internal deliberative material and non-final recommendations. As a result, in an excess of caution, we have supplied those documents in both redacted and unredacted form to the Court, as described in more detail below." *Id.*  The cover letter then goes on to explain UCS' responses to Plaintiffs' various discovery requests, indicating that some requests were complied with, that UCS was unable to find material responsive to one request (noting that material relative to the particular request had already been provided), and that some material responsive to other requests was being submitted to the Court for *in camera* review.  *See id.* at pp. 5-8.  As to the spreadsheets, the cover letter indicates:

> The documents we are providing to the Court along with this letter include .pdfs of the two excel spreadsheets of all UCS [Inspector General ("IG")] matters maintained by the office of the [Office of the Deputy Chief Administrative Judge for all non-NYC Districts ("DCAJ")] . *See* Files entitled "Closed Cases" and "Inspector General Investigations."
>
> The spreadsheets track IG internal investigations for the entire state court system (apart from NYC), and provide links to documents received by the office of the DCAJ responsible for all the districts outside NYC relating to the course of the IG investigation. These spreadsheets are not categorized by the nature of the claim or type of investigation—instead they relate to every type of complaint and disciplinary matter, and are listed by the name of the individual investigated. There are two sets of spreadsheets—one for closed matters (100 pages), and one for open matters (11 pages). There are no drafts of these spreadsheets, rather, the DCAJ's office simply maintains a spreadsheet for keeping track of materials received by it relating to IG investigations. Together the spreadsheets provide links to approximately 3,000 documents; those documents are located on UCS' server, and only the DCAJ's Chief of Staff has access to those links.

*Id.* at CM/ECF p. 5.  The cover letter then asserts that certain files are governed by "investigative privilege; deliberative/executive privilege" and that one file involves "attorney client communication." *Id.* at CM/ECF pp. 5-6.

Before Judge Lovric ruled on whether specific files had to be disclosed, Plaintiffs' counsel argued that the complaints referenced in the spreadsheet "are extremely relevant to this case because they will be probative to the issue of how the court system responds as a policy to complaints of sexual harassment in the workplace and what steps they take or have taken in response to those complaints." Hearing Trans. at 8.  Counsel further argued: "One of the claims that's being brought by my clients is also a claim of retaliation, and thus any differences between how their complaints were handled by the court system and how other complaints were handled by the court system would be extremely relevant to establishing the court system's motive and their intent with respect to actions that they took in response to my client's complaints." *Id.*  Plaintiffs' counsel acknowledged that

8

matters in the spreadsheets other than complaints of sexual harassment were beyond the

scope of discovery, *see id.; see also id.* at 17-19, but also argued:

> [T]o the extent that [the spreadsheet] contains complaints of sexual
> harassment, it is extremely relevant, and the court system's suggestion that
> providing the plaintiffs' own complaints is sufficient is -- it's -- it sort of doesn't
> make a ton of sense given that the plaintiffs already are aware of their own
> complaints.  What they're not aware of are the complaints that were made by
> others in the court system, how those complaints were handled in relation
> to their own complaints, when those complaints were dealt with, how quickly
> they were dealt with, and a variety of other issues that would be relevant to
> this case.  So I would -- I would just reassert the plaintiffs' position that the
> spreadsheet is extremely relevant.

*Id.* at 18.

Following the parties' arguments for and against disclosure, Judge Lovric

addressed whether the 72 files that UCS placed in cloud storage, including the

attachments to those files, needed to be disclosed.  *See generally*, Hearing Trans.  Judge

Lovric indicated that even before receiving a thumb drive from UCS containing links to the

documents attached to the spreadsheets, he was "able to very clearly see and understand

what the linked documents were . . . because they were labeled in a fairly descriptive way,

so the Court had a very good understanding of what those ancillary documents are that

came on that thumb drive." *Id.* at 20.  Judge Lovric indicated that these linked documents

"are very, very voluminous. There's quite a few thousand pages of ancillary linked

documents." *Id.*  Judge Lovric then proceeded to identify, by their file names and whether

a particular file had an attachment (for example, "2_memo.MSG, with attachment"), 46 of

the 75 files that UCS had to disclose to the parties.  *See id.* at 21-24.  As to one file called

"Inspector General Investigations.PDF," which is a spreadsheet, Judge Lovric directed "as

to that spreadsheet, UCS is to provide to the other parties only the entries relating to

Defendant Miller and only the ancillary linked documents as they relate to Defendant Miller. The remainder of the items and ancillary documents in that spreadsheet will not be disclosed." *Id.* at 22.  After enumerating the approximately 46 files to be disclosed, Judge Lovric stated:

> The remaining files that were provided to the Court, the remaining portions of any files that I didn't mention that were provided to the Court by UCS in those 72 files, will not be disclosed and the Court is not ordering disclosure as to those others.
>
> Now, with respect to the Court's order, and the Court reviewed this very, very carefully and thoroughly with respect to the spreadsheets that all the parties have referenced at the last telephone conference and here today. And those are two spreadsheets that the parties have alluded to, and one of them is a spreadsheet that has an itemization of complaints that were reviewed and/or under review by the IG and/or UCS as they relate to all sorts of employees, judges, court officers, administrative personnel, law clerks, and the types of allegations therein are all sorts, all types. One of them is closed investigations or closed matters, and the other is open. And except for the portion that I just read a few moments ago relating to Defendant Miller, who appears on one of those spreadsheets, the remainder of that information the Court is declining to order UCS to disclose. And the reasoning is as follows:
>
> First, I hear what the plaintiffs are saying, and I understand the plaintiffs' position. But the materials underlying those spreadsheets and the specific material therein, first of all, they're highly private matters that do not have anything to do with the plaintiffs or Defendant Miller or anyone, other than they identify persons who are alleged to have engaged in some type of misconduct. They identify the person making the allegations, and they identify the persons that are alleged to have engaged  in the conduct. The conduct, in this Court's view, is extremely personal and private, and some of it involves conduct that could be said would be very detrimental to reputations of persons or individuals having nothing to do with this litigation. Some of it is not only very personal in nature but some of it could be even viewed as salacious or in other ways information that would certainly have a very, very negative view of the individuals, I guess, could be made, and even in some cases that I reviewed against the person that's making the allegation. And I do not believe that in this context that the plaintiffs or Defendant Miller, for that matter, would be required to have that specific type of information in order to further this litigation.

Hearing Trans. at  24-26.

Judge Lovric urged the parties to discuss how pertinent aspects of the foregoing withheld material could be conveyed without identifying anything about the non-parties. *Id.*, at p. 28.  In particular, Judge Lovric suggested methods by which UCS could provide the parties with sanitized information from the spreadsheets, "such as how many complaints were made; categories of complaints; how many of those complaints that were made involve an allegation of sexual misconduct; how many of those complaints involve work force harassment; or how many of those complaints involve employees simply not getting along or employees being mistreated in other ways…." *Id.,* at p. 26.  Judge Lovric also indicated:

> Then beyond that, if a party, or, such as the plaintiffs are interested in the sexual harassment complaints, inquiry can be made of UCS as to those types, how many of those are substantiated or how many of those resulted in investigations being conducted or not being conducted. Or how many of those resulted in UCS taking action or not taking action. And so on. And I think by doing that the plaintiffs, and even Defendant Miller, could extract very sanitized but potentially relevant information without compromising the extreme privacy concerns.
>
> And it is based on that that the Court is not inclined to direct UCS to divulge the other spreadsheet matters which clearly identify the participants and clearly identify the nature of the underlying events; and every one of those underlying events is very, very specific and very unique and very personal, and that type of information the Court just does not see any relevance in the parties knowing a very detailed event where someone alleges that someone did something to someone in some kind of a setting. I just don't see how that very specific information takes this matter forward in any way.  And to begin, I think it's just a complete invasion of the privacy of all the parties concerned, especially in light of the fact that it would certainly appear that many of these underlying events are not public. It's not public knowledge, it did not come into the public realm, and so the Court declines to direct UCS to divulge that information.
>
> Again, I would urge the parties to discuss further how the pertinent aspects of those matters could be conveyed without identifying anything about the individuals or any personal nature.

So that's my reasoning and my ruling as to the spreadsheets. And again, one of them has a listing of closed investigations and the other one has a listing of open investigations. And whether they're closed or whether they're open, the argument is compelling as to both. The open investigations are clearly even more sensitive because they're ongoing. The closed ones are not only sensitive to the privacy nature that I viewed but also the fact that they're closed, and in many cases no public event has come forth from that.

So that's -- that's my ruling, and that's my decision on the issue of those two spreadsheets.

*Id*. at 27-28.

Judge Lovric continued, indicating that he "would very strongly urge UCS to also work with the other parties in providing sanitized information that does not in any way compromise the extreme sensitive nature of the materials that I have declined to order to be provided. But like I said, again, I think sanitized information can be shared which will not compromise UCS's concern and I think will yet satisfy what the plaintiffs and Defendant Miller are trying to assess. " *Id.* at 29.  Judge Lovric indicated that he thought "there is a large field of compromise there that will have both of you keeping what you believe is necessary for your individual clients." *Id.; see* Buckley Decl.  ¶¶ 5-6.[1]

### b.  Parties' Post-Hearing Communications

By letter dated May 6, 2021, UCS provided the parties with the material directed to be released pursuant to Judge Lovric's April 30, 2021 Order. *See* Buckley Decl. ¶ 12;

---

[1]AAG Buckley maintains that at the April 30, 2021 hearing, Judge Lovric directed UCS to release approximately forty-six files "which included items (b) through (d) listed in [paragraph 4 of her declaration] in unredacted format." Buckley Decl.  ¶ 5 (citing Hearing Trans., at pp. 21-24).  She also maintains that "[o]f the material provided to the Court via share link by e-mail dated April 26, 2021, the Court directed UCS to exchange all but a small number of documents that are irrelevant to this action and/or of no probative value." *Id.*  She further maintains that, in addition, Judge Lovric directed UCS to provide to the parties in unredacted format all entries relating to Defendant Miller and the ancillary linked documents as they related to Defendant Miller from the spreadsheets described at paragraph 4, item (a) above.  *Id.* ¶ 6 (citing Hearing Trans., at p.22).

UCS Ex. D, at p. 3.  On the same date, Plaintiffs sent a letter to UCS asserting that "[n]otwithstanding Judge Lovric's ruling, we continue to assert that <u>all</u> of the documents submitted to the Court in camera prior to the hearing, including the spreadsheet used by UCS to track complaints of sexual harassment, are discoverable, highly relevant, and should be produced."  UCS Ex. D, p. 4 (emphasis in original).  The letter also indicated that "in the interest of seeking a mutually acceptable consensus on this issue, and avoiding the expense and further delay of an appeal, Plaintiffs propose that UCS consent to [] produce documents in the narrowly defined categories set forth herein. Plaintiffs would also consent to such documents being produced subject to the terms of the comprehensive protective order issued in this case. In exchange, Plaintiffs would agree to waive any challenge to Judge Lovric's April 30th Order."  *Id.*  Plaintiffs then set out the categories of documents it sought. *See id.* at pp. 4-5.[2]

---

[2]The letter indicated:

Plaintiffs propose that UCS agree to produce the following categories of documents under the terms discussed above:

1. Any document, and/or portions thereof, in UCS's possession, custody, or control concerning:

a. any formal or informal allegations, reports, or complaints of conduct that, if accepted as true, would constitute sexual harassment or retaliation under UCS's current sexual harassment policy; -AND-

     i. which conduct was alleged to have occurred, either in whole or in part, in the building or on the grounds of the Broome County Family Court; -OR-

     ii. which conduct was alleged to have been carried out, in whole or in part, by any person that worked in the building or on the grounds housing Broome County Family Court at the time of the alleged conduct, regardless of where the conduct occurred.

2. Any document, and/or portions thereof, in UCS's possession, custody, or control, concerning:

a. any formal or informal allegations, reports, or complaints relating to conduct that, if

In a letter dated May 12, 2021, UCS indicated that it was "willing to provide 'sanitized' data of the kind contemplated by Magistrate Judge Lovric, in the categories set out in [Plaintiffs'] May 6th letter," giving an example of such sanitized data,[3] and indicating that UCS was willing to discuss other categories of information that Plaintiffs might find useful.  *See* UCS Ex. E at p. 7.  The letter also indicated:

> We stand by our position, however, that the entirety of the spreadsheet materials (apart from those already produced) are highly confidential, involve the privacy rights of third parties, often privileged, and relate to the claims of parties relating to grievances with no connection of any kind to the matter before the Court. They also relate to the confidential and privileged disciplinary recommendations of the IG, and of the DCAJ, in matters that have no logical connection to this one.
>
> Moreover, we object to the document demands set out in your May 6th letter as (1) untimely; (2) not practicable, since they seem to mean to begin

---

accepted as true, would constitute sexual harassment or retaliation under UCS's current sexual harassment policy; -AND-

   i. which conduct was alleged to have been carried out, in whole or in part, by:

      1. Richard Miller, II, at any time; -OR-

      2. Any judge, justice, or magistrate of the Unified Court System between January 1, 2014 and present.

3. Any document, and/or portions thereof, in UCS's possession, custody, or control, concerning:

a. any formal or informal allegations, reports, or complaints relating to conduct that, if accepted as true, would constitute sexual harassment or retaliation under UCS's current sexual harassment policy; -AND-

   i. where such allegations, reports, or complaints were made by a person appointed to serve at the pleasure of any judge, justice, or magistrate of the Unified Court System, including, but not limited to, secretaries, law clerks, assistant law clerks, and court attorneys.

[3]The letter indicated:

For example, we could list the number of complaints of harassment/retaliation in each of the three categories mentioned in your letter, the year of such complaints, whether they were found substantiated, whether they were in Broome County Family Court, and whether a Judge was complained of in the matter, and whether a personal appointee was making such a claim.

14

discovery all over with regard to the claims of third parties not before the court; (3) constitute discovery sought in search of a cause of action, and not the reverse (*See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (the Federal Rules "do[] not unlock discovery for a plaintiff armed with nothing more than conclusions"); (4) and are unduly burdensome, since they do not restrict themselves to the spreadsheet materials, but instead relate to absolutely any document relating to such claims, and, moreover, set no limit on time-frame.

Plaintiffs' claims in this matter are highly situational—they are fact-specific. Plaintiffs claim that UCS supervisors did not respond timely or appropriately to their complaints about Judge Miller. Such a claim involves an examination of what those complaints were, when they were made, and what the responses were, not the proverbial safari into UCS' records in hopes of finding something, in another district, concerning the confidential complaints and testimony of other parties, relating to a different situation and different complaints.

*Id.* at pp. 7-8.

Plaintiffs did not respond directly to UCS' offer to provide such sanitized information and instead filed the current appeal. *See* Buckley Decl. ¶ 15.

### c.  Analysis

Plaintiffs argue that Judge Lovric's  April 30, 2021 Order "is erroneous, contrary to law, and must be reversed."  Dkt. No. 113-1 at 2.  In particular, Plaintiffs note that the Federal Rules of Civil Procedure provide for liberal discovery and provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P.  26(b)(1).  They further note that the liberal discovery rules are even more broadly applied in employment discrimination cases and allow "broad access to employers' records in order to document their claims." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074.  Plaintiffs argue that "[u]nder this broad context, discovery of employment discrimination complaints unrelated to plaintiff's

15

complaint is appropriate." Dkt. No. 113-1 at 7 (citing *Quaratino v. Tiffany & Co.*, 71 F.3d

58, 60 (2d Cir. 1995)(reversing district court's dismissal of plaintiff's Title VII and NYS

Human Rights Law action upon finding that, among other things, an employer's response

to other similar complaints of discrimination raised material issues of fact with regard to

whether plaintiff was discriminated against); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d

1074, 1086 (3d Cir. 1996) ("Evidence of discrimination against other employees or of a

hostile work environment is relevant to whether one of the principal non-discriminatory

reasons asserted by [an employer] for its actions was in fact a pretext for ...

discrimination.") (citing cases); *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 156 (8th

Cir. 1990), *cert denied* 498 U.S. 854 (1990) (reversing judgment upon finding that

Magistrate Judge erred by, among other things, excluding evidence of sexual harassment

complaints by others in plaintiff's workplace and holding that "[b]ecause an employer's

past discriminatory policy and practice may well illustrate that the employer's asserted

reasons for disparate treatment are a pretext for intentional discrimination, this evidence

should normally be freely admitted at trial."); *Bell v. Lockheed Martin Corp.*, 270 F.R.D.

186, 197 (D.N.J. 2010) (discovery of unrelated complaints permitted to determine how

defendant "identifies and assesses other forms of discrimination vis-à-vis gender and

what, if any, steps they take to remedy the other forms of discrimination they find.")).

Plaintiffs contend that "[t]he spreadsheet maintained by UCS containing allegations of

sexual harassment, is by its very nature, relevant. These files relate specifically to

complaints of sexual harassment within the UCS system and how those complaints and

investigations were treated by UCS, whether it followed its own policies and practices,

whether there was an atmosphere of condoning sexual harassment, whether certain types of complaints were treated more or less favorably, and whether complaints against judges or complaints by chambers staff were treated the same as complaints by or against other employees." *Id.* at 9.  Plaintiffs indicate that they are only seeking documents pertaining to sexual harassment and retaliation and are not seeking disclosure of other types of misconduct that may be the subject of the withheld documents. *Id.*  They contend that "[u]nder the necessarily broad context of the discovery rules, especially with respect to employment discrimination claims, the withheld documents pertaining to sexual harassment claims should be considered relevant to the instant litigation." *Id.*

Although Plaintiffs "correctly note[] that courts generally apply more liberal discovery rules in employment discrimination cases, and that comparator evidence is important to making out a claim of discrimination," *Yoo v. Actimize, Inc.*, No. 12 CIV. 8108 VSB, 2014 WL 1087974, at *1 (S.D.N.Y. Mar. 19, 2014)(citations omitted); *see also Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014)("Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive.")(quoting *Hollander v. Am. Cyanamid Co.* 895 F.2d 80, 84 (2d Cir. 1990)), Plaintiff's have not met their heavy burden of showing that Judge Lovric abused his discretion so that reversal is warranted.

To the extent Judge Lovric ruled that materials that contained personal, private, and salacious material that could potentially be embarrassing or detrimental to the reputations

of nonparties did not need to be produced, the order is not contrary to law. *See* Fed. R. Civ. P. 26(c)(a court has discretion to limit discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

To the extent Judge Lovric denied disclosure on relevance grounds, Plaintiffs have a stronger argument but nonetheless fail to meet their heavy burden of demonstrating that Judge Lovric abused his broad discretion in managing discovery.   Under the Federal Rules of Civil Procedure, discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "While discoverability is determined by the broad standard of relevance, it is not a license for unrestricted discovery." *Rattray v. City of New York*, No. 17-CV-8560 (PGG/KHP), 2021 WL 5810903, at *1 (S.D.N.Y. Dec. 6, 2021)(citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139–40 (S.D.N.Y. 2011)).  "[A] district court has 'wide latitude to determine the scope of discovery,' and 'abuses its discretion only when the discovery is so limited as to affect a party's substantial rights.'"  *Aviles v. S&P Glob., Inc.*, No. 17-CV-2987 (JPO/KHP), 2022 WL 278557, at *2 (S.D.N.Y. Jan. 31, 2022)(quoting *In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008)(citation omitted)).

Here, Judge Lovric indicated that even before receiving a thumb drive from UCS containing links to the documents attached to the spreadsheets, he was "able to very clearly see and understand what the linked documents were . . . because they were labeled in a fairly descriptive way, so the Court had a very good understanding of what those ancillary documents are that came on that thumb drive."  Hearing Trans. at 20.  He

18

further indicated that he reviewed the submitted material "very, very carefully and thoroughly with respect to the spreadsheets," *id.* at 24, and found the underlying material involved conduct that was "extremely personal and private" and that he did not believe that "in this context . . . the plaintiffs or Defendant Miller . . . would be required to have that specific type of information in order to further this litigation." *Id.* at 26.  He also indicated that he was "not inclined to direct UCS to divulge the other spreadsheet matters which clearly identify the participants and clearly identify the nature of the underlying events; and every one of those underlying events is very, very specific and very unique and very personal, and that type of information the Court just does not see any relevance in the parties knowing a very detailed event where someone alleges that someone did something to someone in some kind of a setting. I just don't see how that very specific information takes this matter forward in any way." *Id.* at 27-28.

Judge Lovric did not provide any further discussion as to whether the withheld material, perhaps in a redacted form to remove the participants' names, would be relevant to the issues addressed by Plaintiffs' counsel.  Nevertheless, because Judge Lovric was justified in limiting discovery of private and embarrassing information, and because the material he reviewed involved very personal, unique, and specific conduct that Judge Lovric did not see as "taking this matter forward in any way," the Court cannot conclude that Plaintiffs have met their heavy burden of demonstrating that Judge Lovric abused his broad discretion over resolution of discovery matters.  Furthermore, Plaintiffs have not established that discovery overall is so limited as to affect their substantial rights.

Plaintiffs' arguments as to UCS' lack of a privilege log is of no moment on this appeal because Judge Lovric did not restrict disclosure on the grounds that any material

was privileged.  This appeal is not a vehicle for the Court to reconsider Judge Lovric's discovery determination *de novo*, or to assess whether there is some reason other than that relied upon by Judge Lovric to vacate his determination.

Likewise, there is no merit to Plaintiffs' argument that Judge Lovric's decision to deny the disclosure of the withheld documents was an abuse of discretion, clearly erroneous, and contrary to law because he could have disclosed the sensitive material using the Stipulated Protective Order in this case.  None of the parties referenced the use of the Stipulated Protective Order (that guides the parties' disclosures), and Judge Lovric did not abuse his discretion for failing to utilize a device the parties failed to reference.  Moreover, for the reasons discussed above, Plaintiffs have not met their heavy burden of establishing that Judge Lovric abused his discretion in limiting disclosure of the materials he reviewed.

That being the case, however, the hearing transcript indicates that there may be potentially relevant information that Judge Lovric felt could be acquired through sanitized disclosures.  *See* Hearing Trans., at 27 ("And I think by doing that the plaintiffs, and even Defendant Miller, could extract very sanitized but potentially relevant information without compromising the extreme privacy concerns.").  While the Plaintiffs' and UCS' post-hearing communications indicate that they could not come to an agreement on utilizing Judge Lovric's proposed procedure, the interests of justice dictate that the matter be remanded to Judge Lovric so he can determine whether relevant material can be provided to Plaintiffs and Defendant Miller either in a redacted form, or through the Stipulated Protective Order.  The Court realizes that this could entail extending discovery and motion deadlines, addressing UCS' claims of privilege, and determining whether this discovery is

unreasonably cumulative or duplicative, if the party seeking discovery already has ample opportunity to obtain the information sought, if the discovery is proportional to the case, or if the burden or expense of the discovery outweighs its likely benefit.  *See* Fed. R. Civ. P. 26(b)(1-2); *see also* Murphy Decl., Dkt. No. 125-7,[4] ¶ 12 ("[T]he spreadsheets relate to highly confidential and sensitive internal investigations, including investigations of alleged criminal behavior, and criminal records of employees. Given the variety and types of matters investigated and tracked by the spreadsheet, the spreadsheet itself and the linked documents are of a highly sensitive nature to the subject employees and to the complainants and witnesses who are assured by the IG that their statements will be kept confidential to the fullest extent possible. Release of this information to third parties, who could then seek to explore those claims and use them in this litigation, would contradict these assurances of witnesses' confidentiality, and dissuade them and other potential witnesses from speaking candidly with the IG."); *id.*, ¶ 13 ("Only a very few of the approximately 500 IG investigations and 2,700 documents reflected on the spreadsheets relate to complaints of sexual harassment. Moreover, a review of the face of the spreadsheets does not necessarily reveal whether there was a complaint of sexual harassment. . . .  [T]o identify any and all IG investigations of sexual harassment complaints reflected on the spreadsheets would effectively require individual review of each investigation reflected on those sheets-a burdensome and unnecessary task."). However, Judge Lovric is in the best position to address these issues and to manage

---

[4]Scott Murphy is the Chief of Staff for the Office of the Deputy Chief Administrative Judge for Courts Outside New York City, part of UCS.  He  reports directly to Hon. Vito C. Caruso, Deputy Chief Administrative Judge for Courts Outside New York ("DCAJ").  *See* Murphy Decl., Dkt. No. 125-7, ¶ 1.

discovery.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiffs' appeal seeking to vacate or modify

Judge Lovric's April 30, 2021 discovery decision, Dkt. No. 113, is **DENIED**, but the Court

remands the matter to Judge Lovric to determine whether some of the withheld files he

addressed on April 30, 2021 could properly be disclosed under the Stipulated Protective

Order in this case, or in redacted form.

**IT IS SO ORDERED.**

Dated: March 25, 2022

Thomas J. McAvoy
Senior, U.S. District Judge