UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RACHELLE GALLAGHER; and MARK
KACHADOURIAN,

                          Plaintiffs,

v.                                                                      3:18-CV-1476
                                                                        (GTS/ML)
THE UNIFIED COURT SYSTEM OF THE STATE
OF NEW YORK; and RICHARD MILLER, II,
individually and in his official capacity,

                          Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

DREYER BOYAJIAN LLP                                   WILLIAM J. DREYER, ESQ.
  Counsel for Plaintiffs                             JUSTIN QUINN DAVIS, ESQ.
75 Columbia Street
Albany, NY 12210

HON. LETITIA JAMES                                    RYAN W. HICKEY, ESQ.
NEW YORK STATE ATTORNEY GENERAL                      NOAH C. ENGELHART, ESQ.
  Counsel for Defendant Unified Court System         WILLIAM A. SCOTT, ESQ.
300 South State Street, Suite 300                    Assistant Attorneys General
Syracuse, NY 13202

BOND SCHOENECK & KING, PLLC                           LIZA R. MAGLEY, ESQ.
  Counsel for Defendant Miller                        SUZANNE M. MESSER, ESQ.
One Lincoln Center
Syracuse, NY 13202

600 Third Avenue, 22nd Floor                          LOUIS P. DILORENZO, ESQ.
New York, NY 10016

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this civil rights action filed by Rachelle Gallagher and

Mark Kachadourian ("Plaintiffs") against the Unified Court System of the State of New York

and Richard Miller II ("Defendants"), are the following two motions: (1) Defendant Miller's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or, in the alternative, for a new trial or alteration or amendment of the verdict pursuant to Fed. R. Civ. P. 59(a) and (e); and (2) Plaintiff Gallagher's motion for attorney's fees based on the verdict at trial.  (Dkt. Nos. 252, 267.)  For the reasons set forth below, Defendant Miller's motion is denied, and Plaintiff Gallagher's counsel is awarded attorney's fees as detailed below.

## I.     RELEVANT BACKGROUND

### A.     Relevant Procedural History

Because this case has a lengthy history and has already been the subject of a trial on the claims that survived motion practice, the Court will not engage in a detailed recitation of the facts and circumstances underlying this case, with which both the Court and the parties are familiar.  Generally, after motion practice was conducted, a trial was held from July 28, 2025, through July 31, 2025, during which the jury found Defendant Unified Court System not liable on Plaintiff Gallagher's and Plaintiff Kachadourian's Title VII claims, but that Defendant Miller was liable on Plaintiff Gallagher's claim of hostile work environment based on gender in violation of the Equal Protection Clause of the United States Constitution.  (Dkt. No. 245.)  As part of that verdict, the jury awarded Plaintiff Gallagher compensatory damages in the amount of $200,000 against Defendant Miller and also indicated that an award of punitive damages was warranted against Defendant Miller.  (*Id.*)

### B.     Parties' Briefing on Defendant Miller's Motion

#### 1.     Defendant Miller's Memorandum of Law

Generally, in his motion, Defendant Miller makes three arguments. (Dkt. No. 267, Attach. 5.) First, Defendant Miller argues that the Court should grant him judgement as a matter of law and dismiss Plaintiff Gallagher's claim against him because the jury did not have a legally sufficient evidentiary basis to find in favor of Plaintiff Gallagher on that claim. (*Id.* at 10-22.) Specifically, Defendant Miller argues that there was no reasonable basis in the evidence for the jury to conclude that (a) he acted under the color of law when engaging in the relevant conduct given that he had a long-standing personal relationship with Plaintiff Gallagher outside of his position as a judge, (b) the conduct was because of Plaintiff Gallagher's gender given that he also supposedly made sexual or offensive comments in front of or to Plaintiff Kachadourian (who is male), (c) the conduct he supposedly engaged in was sufficiently severe and persuasive to constitute a hostile work environment given that the evidence presented showed it was instead merely episodic and isolated and Plaintiff did not tell her husband about that conduct at the time or refrain from attending a wedding for Defendant Miller's niece despite her reported distress, and (d) any damages were proximately caused by Defendant Miller's conduct because the evidence in fact fails to show that Plaintiff Gallagher suffered any significant and relevant medical issues during the time she was employed by Defendant Miller at the Family Court and the testimony of expert witness Dr. Bashkoff refutes any causation. (*Id.*)

Second, Defendant Miller argues that the Court should, in the alternative, grant a new trial because the verdict rendered by the jury is against the weight of the evidence presented at trial. (*Id.* at 22-24.) Specifically, Defendant Miller argues that the testimony of Plaintiff Gallagher and Plaintiff Kachadourian is unreliable and should not be credited, especially in light of a lack of corroborating evidence or testimony related to Defendant Miller's conduct. (*Id.*)

3

Third, Defendant Miller argues that, in the alternative, the Court should amend the judgment because the jury's verdict for compensatory damages in the amount of $200,000 is excessive in light of the evidence presented. (*Id.* at 24-27.) Specifically, Defendant Miller argues that Plaintiff's damages were no greater than "garden variety" in that they lack extraordinary circumstances or medical corroboration and that, even if Plaintiff Gallagher's damages are considered to be in the "significant" category, the amount is excessive considering they are premised only on emotional distress as opposed to any sort of physical threat or harm. (*Id.*) Defendant Miller argues that the judgment should be amended to reduce the amount of damages to "a more appropriate amount," namely $25,000. (*Id.* at 27.)

## 2. Plaintiff Gallagher's Opposition Memorandum of Law

Generally, in opposition to Defendant Miller's motions, Plaintiff Gallagher makes three arguments. (Dkt. No. 269.) First, Plaintiff Gallagher argues that Defendant Miller's motion for judgment as a matter of law should be denied because (a) the jury reasonably found based on the evidence that Defendant Miller acted under the color of state law given that he engaged in the relevant conduct while acting as a judge and Plaintiffs' employer at their place of work during work hours, including engaging in harassment of another female employee with whom he did not have any preexisting personal relationship, (b) the jury reasonably found that the conduct was based on gender given that all of the comments and conduct were rooted in his desire to have sexual relations with women in the Broome County Courthouse (and often with Plaintiff Gallagher in particular), (c) the jury reasonably found that the conduct was severe and pervasive, and (d) the jury reasonably calculated the amount of compensatory damages based on the various

testimony from multiple sources about how the conduct affected Plaintiff Gallagher's mental health.  (*Id.* at 6-8.)

Second, Plaintiff Gallagher argues that Defendant Miller's motion for a new trial should also be denied because the jury's failure to credit Defendant Miller's own account or the testimony of his expert (and to instead believe the contrary evidence) does not constitute a manifest injustice.  (*Id.* at 9.)

Third, Plaintiff Gallagher argues that the Court should not amend the verdict related to the amount of compensatory damages because the evidence presented at trial (including Plaintiff Gallagher's own testimony, corroborating eyewitness testimony, testimony regarding the physical manifestations of her emotional harm, and counseling records) raises the damages in this case into at least the "significant" or "egregious" category and thus an award of $200,000 is not so great as to shock the conscience.  (*Id.* at 9-11.)

### 3.    Defendant Miller's Reply Memorandum of Law

Generally, in reply to Plaintiff Gallagher's opposition, Defendant Miller makes three arguments.  (Dkt. No. 270.)  First, Defendant Miller argues that the Court should grant judgment as a matter of law because (a) contrary to Plaintiff Gallagher's arguments, neither the timing of his conduct nor the fact he engaged in similar conduct with another court employee is dispositive to the question of whether he acted under the color of state law as to Plaintiff Gallagher, and the evidence presented shows that the relevant conduct was not made possibly *only* by virtue of his authority as a judge given that, apart from their personal relationship, Plaintiff Gallagher had also previously worked for Defendant Miller for a decade before he became a judge, (b) the alleged conduct was gender neutral because Defendant Miller subjected both Plaintiff Gallagher and

Defendant Kachadourian to it and Plaintiff Gallagher has failed to cite any testimony in support of her arguments, (c) Plaintiff Gallagher has failed to cite any evidence to substantiate the specific frequency of the alleged conduct or to contradict Defendant Miller's arguments in his memorandum of law, and (d) the evidence Plaintiff Gallagher cites in support of the jury's damages award is insufficient to support causation or the amount of the award. (*Id.* at 4-11.)

Second, Defendant Miller argues that the Court should grant a new trial because it was unreasonable for the jury to credit Plaintiffs' testimony, whether or not the jury found Defendant Miller's testimony to be credible, and his removal from his judicial position could not be a valid basis upon which the jury could have found liability on Plaintiff Gallagher's claims. (*Id.* at 11-12.)

Third, Defendant Miller argues that the Court should amend the judgment as to the amount of compensatory damages, disagreeing with Plaintiff Gallagher's assertion that the evidence here presents a "severe" or "egregious" set of circumstances and arguing that the cases cited by her in support of that assertion are inapposite. (*Id.* at 12-13.)

### C.    Parties' Briefing on Plaintiff's Motion for Attorney's Fees

#### 1.    Plaintiff Gallagher's Memorandum of Law

Generally, in her motion for attorney's fees, Plaintiff Gallagher makes two arguments. (Dkt. No. 252, Attach. 4.)  First, Plaintiff Gallagher argues that she is entitled to an award of attorney's fees because she is a prevailing party in light of the jury's verdict on her Equal Protection hostile work environment claim. (*Id.* at 5.)

Second, Plaintiff Gallagher argues that the requested amount of fees—$357,585.00—is reasonable based on the time expended, the experience of Attorney Dreyer, the success achieved,

and the provision of contemporaneous time records demonstrating the nature of the work performed at each stage of this case. (*Id.* at 5-6.) The above total is comprised of the following: (a) 168 hours at a rate of $650.00 for Attorney Dreyer; (b) 148.10 hours at a rate of $450.00 for Attorney Davis; (c) 202.20 hours at a rate of $300.00 and 94.60 hours at a rate of $450.00 for Attorney Owens; (d) 5.40 hours at a rate of $450.00 for Attorney Mix; (e) 210.10 hours at a rate of $300.00 for Attorney Friedman; and (f) 97.20 hours at a rate of $125.00 for Paralegal Fereday. (Dkt. No. 252, Attach. 1, at 2.)

## 2. Defendant Miller's Opposition Memorandum of Law

Generally, in opposition to Plaintiff Gallagher's motion, Defendant Miller makes two arguments. (Dkt. No. 266.) First, Defendant Miller argues that Plaintiff Gallagher's request should be reduced based on the minimal degree of success achieved given that she ultimately succeeded on only one claim against one Defendant out of the multiple claims she asserted against the two Defendants in this case and because the requested fee amount far exceeds the amount of the damages she actually recovered. (*Id.* at 6-8.) Defendant Miller argues that the Court should reduce the fee by at least 80-percent to account for her limited degree of success. (*Id.*)

Second, Defendant Miller argues that the amount requested by Plaintiff Gallagher is also not reasonable because (a) the hourly rates sought are themselves unreasonable given that they are much higher than what has been found to be reasonable in this district, and (b) the amount of hours claimed is also unreasonable given that (i) Plaintiffs' counsel uses block billing in multiple entries that prevents a reasonable assessment of what work was performed, (ii) a number of entries related to activities such as "trial preparation" or "research" are too vague to permit an

assessment of whether the time expended for such work was reasonable, (iii) Plaintiffs' counsel's use of multiple associates working together represents overstaffing that has created duplicate work that should not be compensable, (iv) Plaintiffs' counsel has included administrative tasks that are also not compensable, (v) travel time should be reimbursed only at a 50-percent rate, and (vi) Plaintiffs' counsel's request contains entries related to unsuccessful claims brought by Plaintiff Kachadourian or against Defendant Unified Court System that are not compensable related to Plaintiff Gallagher's status as a prevailing party.  (*Id.* at 9-29.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standards Governing a Motion for Judgment as a Matter of Law

Pursuant to Fed. R. Civ. P. 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a).  Such a motion can be renewed "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged."  Fed. R. Civ. P. 50(b).  The motion should be granted "only if 'viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'"  *Zioness Movement Inc. v. Lawfare Project, Inc.*, 746 F. Supp. 3d 125, 131 (S.D.N.Y. 2024) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 [2d Cir. 1993]).  Judgment as a matter of law "should not be granted unless there is

either 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture' or unless 'there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against it.'" *Fink v. City of New York*, 129 F. Supp. 2d 511, 514 (E.D.N.Y. 2001) (quoting *Galdieri-Ambrosini v. Nat'l Realty and Dev. Corp.*, 136 F.3d 276, 289 [2d Cir. 1998]).

**B.    Legal Standards Governing a Motion for New Trial and to Alter or Amend a Verdict**

Pursuant to Fed. R. Civ. P. 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—" if "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "The 'general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive.'" *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 14-CV-0476, 2024 WL 385013, at *2 (W.D.N.Y. Feb. 1, 2024) (quoting *Welch v. United Parcel Servs., Inc.*, 871 F. Supp. 2d 164, 174 [E.D.N.Y. 2012]). "For a district court to order a new trial pursuant to Rule 59(a), it must conclude that the jury 'reached a seriously erroneous result' or that 'the verdict is a miscarriage of justice'—in other words, the court 'must view the jury's verdict as against the weight of the evidence.'" *Alexander v. Stop and Shop Supermarket Co., LLC*, 22-CV-9557, 2025 WL 2963184, at *2 (S.D.N.Y. Oct. 21, 2025) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 245 [2d Cir. 2003]). Although the Court is in this instance permitted to weigh the evidence itself, a motion for a new trial should not be granted except in situations where "the jury's verdict is

egregious" and is cautioned that it "should rarely disturb a jury's evaluation of a witness's

credibility." *DLC Mgmt Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998); *see also*

*Manley*, 337 F.3d at 244-45 (noting that "a trial judge is free to weigh evidence himself, and

need not view it in the light most favorable to the verdict winner").

    Pursuant to the same rule, a party may also file a motion to alter or amend a judgment.

Fed. R. Civ. P. 59(e). "A court may grant a Rule 59(e) motion 'only when the [movant]

identifies an intervening change of controlling law, the availability of new evidence, or the need

to correct a clear error or prevent manifest injustice.'" *Berardi v. Berardi*, 22-CV-0159, 2023

WL 4544625, at *3 (N.D.N.Y. June 12, 2023) (Sannes, C.J.) (quoting *Metzler Inv. Gmbh v.*

*Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142-43 [2d Cir. 2020]); *accord Salamone v. Douglas*

*Marine Corp.*, 111 F.4th 221, 232 (2d Cir. 2024). "Further, 'the standard for granting a motion

to amend or alter the judgment pursuant to [Rule] 59(e) in the Second Circuit is strict and

reconsideration will generally be denied.'" *Berardi*, 2023 WL 4544625, at *3 (quoting *Marshall*

*v. United States*, 368 F. Supp. 3d 674, 677 [S.D.N.Y. 2019]).

### C.    Legal Standards Governing a Motion for Attorney's Fees

    "In a 42 U.S.C. § 1983 action, 'the court, in its discretion, may allow the prevailing party,

other than the United States, a reasonable attorney's fee as part of the costs.'" *Murphy v.*

*Onondaga Cnty.*, 18-CV-1218, 2024 WL 4802838, at *1 (N.D.N.Y. Nov. 15, 2024) (Hurd, J.)

(quoting 42 U.S.C. § 1988[b]). "In assessing whether a request for attorney's fees is reasonable,

'[b]oth the [Second Circuit] and the Supreme Court have held that . . . the product of a

reasonable hourly rate and the reasonable number of hours required by the case . . . creates a

presumptively reasonable fee.'" *Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022)

(Hurd, J.) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 [2d Cir. 2011]).

## III.    ANALYSIS

### A.    Whether Defendant Miller Is Entitled to Judgment as a Matter of Law

After careful consideration, the Court answers the above question in the negative for the

reasons stated in Plaintiff Gallagher's opposition memorandum of Law.  *See, supra,* Part I.B.2 of

this Decision and Order.  To those reasons, the Court adds the following analysis.

#### 1.    Color of State Law

Defendant Miller has failed to demonstrate that no reasonable juror could determine that

his relevant actions were taken under the color of state law.  Specifically, Defendant Miller's

argument that a pre-existing relationship between himself and Plaintiff Gallagher precludes a

finding that his actions were taken under the color of state law is not supported by any legal

authority.  Indeed, the cases he cites for that proposition are distinguishable.[1]

---

[1]    More specifically, in *Doe v. Waraksa*, 06-CV-1262, 2013 WL 597800 (D. Conn. Feb. 13, 2013), the basis of the court's dismissal of the claims was not that the defendant and the plaintiff had a preexisting relationship, but rather because the sexual assaults that underly those claims occurred at time when defendant was not acting in his position with the Emergency Management Agency.  *Waraksa*, 2013 WL 597800, at *2-6 (noting that "[n]one of the sexual assaults or misconduct occurred during any Town or Emergency Management event" and occurred at the defendant's residence, and that defendant never threatened the minor victims by reference to his official position).  Moreover, in *Burns v. City of Utica*, 2 F. Supp. 3d 283 (N.D.N.Y. 2014) (Scullin, J.), although both the plaintiff and defendant assaulter were municipal firefighters and the court concluded that his actions in assaulting the plaintiff had "nothing to do with his official position as a firefighter," there is no indication in that Decision and Order that (a) the assault occurred while the parties were working or at a municipal building, or (b) he in anyway invoked any sort of municipal authority related to the assault.  *Burns*, 2 F. Supp. 3d at 287, 293.  Moreover, *Burns* in no way suggests, as Defendant argues, that a preexisting relationship necessarily precludes a finding that an individual acted under the color of law in any circumstance.  *Id.* at 293.  Finally, in *Chepilko v. City of New York*, 06-CV-5491, 2012 WL 398700 (E.D.N.Y. Feb. 6, 2012), it was undisputed that the defendant was acting under the color

Furthermore, to the contrary, in *United States v. Giordano*, 442 F.3d 30 (2d Cir. 2006), the Second Circuit explained that "we have found that officials acted under the color of state law when their misuse of official power made the commission of a constitutional wrong possible, even though the official committed abusive acts for personal reasons far removed from the scope of official duties." *Giordano*, 442 F.3d at 44 (collecting cases).   Despite this authority, Defendant Miller argues that he cannot be reasonably found to have been acting under the color of state law because he could have harassed Plaintiff Gallagher outside of any connection to his position as a judge.   However, a reasonable jury could certainly find that that is *not* what happened here.   Rather, the evidence presented at trial indicated that the harassment occurred while Defendant Miller and Plaintiff Gallagher were at the Family Court during work hours, typically in his chambers, and that (a) he specifically made innuendos intended to be relayed to Plaintiff Gallagher regarding what "a real secretary does" (reasonably implying the provision of sexual services as a consequence of her position as his secretary) and expressing that he should have hired someone else who would act like a "real secretary," and (b) on at least one occasion, he made it clear he wanted Plaintiff Gallagher to perform sexual services for a state senator with the purpose of furthering Defendant Miller's career interests.   As a result, regardless of whether

---

of state law because "Major's interaction with plaintiff 'arose solely out of' his position as a Parks Manager and an employee of the city, not out of any personal relationship or as a private citizen." *Chepilko*, 2012 WL 398700, at *10.   However, this statement does not stand for any broad proposition, as Defendant Miller asserts, that the existence of any personal relationship between the parties means that actions can never be considered to have been taken under the color of state law, merely that, at the time of the incident, the defendant in that case was not acting in a private capacity.   In short, none of the cases from this circuit that Defendant Miller relies upon even suggest that the existence of a preexisting personal relationship bars a finding that, on a certain occasion, a defendant acted under the color of state law.

Plaintiff Gallagher and Defendant Miller had a personal social relationship prior to the events underlying her claims, the harassment at issue here was still committed in relation to Defendant's official position as a Family Court judge (and, at the time, Plaintiff Gallagher's employer). Additionally, part of Plaintiff Gallagher's claim included evidence that Defendant Miller engaged in harassment of other women also while at the courthouse.

For all of these reasons, the Court finds that, the jury had a reasonable basis in the evidence for finding that Defendant Miller acted under the color of state law as to the relevant harassment.

## 2.    Sex-Based Harassment and Hostile Work Environment

Defendant Miller next argues that the jury could not have reasonably found that the harassment was based on Plaintiff Gallagher's sex or that any misconduct was sufficiently severe and persuasive to constitute a hostile work environment. However, these arguments amount to little more than a request that the Court engage in its own weighing of the evidence and credit his arguments and interpretations of the evidence. Moreover, these issues were developed at trial through the presentation of the evidence and fully considered by the jury; and the Court finds the jury's resolution of these issues to be reasonable based on that evidence, which included making sexual comments to/about or engaging in harassing behavior toward multiple women, discussing sexual conduct specifically as it pertained to women, showing employees pictures of nude women, and asking Plaintiff Gallagher (a female employee) to perform sexual services. Indeed, as noted by Plaintiff Gallagher's counsel, although Defendant Miller made comments about women or the provision of sexual services by women to Plaintiff Kachadourian and other men, he never requested that any of those men perform such sexual services for him or the state

senator, nor did he make sexually charged comments *about* men.  Further, as will be discussed in more detail related to Defendant Miller's request to amend the amount of the damages award, the evidence presented permitted a reasonable jury to conclude that the frequent and offensive conduct was sufficiently severe and pervasive to meet the requirements of the claim.  As a result, this is certainly not a situation in which there is a complete absence of evidence supporting the verdict or where the evidence is so overwhelming that a reasonable and fair-minded person could simply not reach the verdict the jury did.

For all of these reasons, the Court finds that the jury had a reasonable basis in the evidence for finding that Defendant Miller's harassment was based on Plaintiff Gallagher's sex and that it was sufficiently severe and persuasive to constitute a hostile work environment.

### 3.    Damages

Defendant Miller also argues that the jury's assessment of compensatory damages has no reasonable basis in the evidence because Plaintiff Gallagher did not demonstrate that she experienced any injuries proximately caused by Defendant Miller's conduct.  Again, Defendant Miller does little more than recite various evidence and attempt to explain why it is or is not credible, particularly urging the Court to accept the testimony from Dr. Bashkoff as proof that Plaintiff Gallagher's asserted injuries were not caused by Defendant Miller's conduct.  But the Court sees nothing in Defendant Miller's briefing that would suggest the jury had no reasonable basis for its conclusion regarding damages, even if there was some evidence presented that might be contrary to that finding.  It was the jury's responsibility to weigh all the evidence presented at trial and Defendant Miller has not provided a compelling argument to suggest that their resolution of that issue was unreasonable.

For all of the above reasons, and those stated below in Part III.B. of this Decision and Order, the Court finds that the jury had a reasonable basis in the evidence for awarding compensatory damages in the amount of $200,000; and Defendant Miller's renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) is denied.

**B.     Whether Defendant Miller Is Entitled to a New Trial or an Alteration or Amendment of the Judgment**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Plaintiff Gallagher's opposition memorandum of Law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

As to the motion for new trial pursuant to Fed. R. Civ. P. 59(a), contrary to Defendant Miller's arguments, the verdict reached by the jury is not against the weight of the evidence or seriously erroneous because, as discussed above, there was sufficient evidence presented from which a reasonable factfinder could reach the conclusions that the jury did. Defendant Miller's attempt to poke holes in the Plaintiffs' credibility by highlighting a few examples of the Plaintiffs' testimony does not undermine the wealth of evidence presented, nor does the Court find them to actually be sufficient reasons to discount the Plaintiffs' testimony. Simply put, nothing in Defendant Miller's arguments disagreeing with the jury's conclusion persuades the Court that the verdict was seriously erroneous such that it would merit the extraordinary remedy of a new trial on Plaintiff's Equal Protection claim.

As to the motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e), Defendant Miller makes essentially the same arguments he made in support of his motion for judgment as a matter of law. In particular, Defendant Miller's theory relies on an argument that Ms. Bronson's treatment notes should not be believed, while the testimony of Dr. Bashkoff should be believed.

15

But the Court cannot say that the jury's apparent assessment of the credibility of these sources (or the ultimate outcome) was clearly erroneous; as the jurors were instructed, they were permitted to assess the credibility of every witness, including Dr. Bashkoff, and the fact that she was an expert did not in any way require the jury to find her opinions to be accurate or credible. Further, beyond the medical testimony, Plaintiff Gallagher notably provided her own personal testimony regarding the effect that Defendant Miller's harassment had on her; her husband testified about changes he observed in her mood and behavior; and others such as Ms. Singer and Ms. Vandeburg (all of which will be addressed in detail below related to the damages award) testified about their observations of Plaintiff's mood and behavior. Simply stated, the jury was entitled to credit such testimony and the evidence from Ms. Bronson over Dr. Bashkoff's (or Ms. Fassett's) if they found it to be more believable (which they clearly did, based on the outcome here), and the fact that they did so does not in any way suggest that the verdict is clearly erroneous or representative of a manifest injustice.

Defendant Miller additionally argues that the $200,000 awarded in compensatory damages is so excessive in light of the evidence as to be egregious. "[A] district court weighing a Rule 59 motion on the basis of an allegedly excessive damages award should consider 'whether the award is so high as to shock the conscience and constitute a denial of justice.'" *Qorrolli v. Metropolitan Dental Assocs.*, 124 F.4th 115, 125 (2d Cir. 2024) (quoting *Dancy v. McGinley*, 843 F.3d 93, 113 [2d Cir. 2016]). "'A court is not required to remit a large non-economic damage award, even where evidence of emotional damage consists solely of plaintiff's testimony.'" *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018) (quoting *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 328 [S.D.N.Y. 2016]). "'However, when a

court is convinced the jury's award is entirely out of proportion to the Plaintiff's injury, and was motivated by sympathy rather than by evidence of harm, remittitur is the appropriate remedy.'" *Duarte*, 341 F. Supp. 3d at 320 (quoting *Buoveng*, 175 F. Supp. 3d at 328).

There are three generally recognized categories of emotional distress damages: "garden variety," "significant," and "egregious." *Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 548 (2d Cir. 2020). "'Garden variety' claims are those which 'the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms.'" *Lee v. Delta Air Lines, Inc.*, 22-CV-8618, 2025 WL 2208856, at *4 (S.D.N.Y. Aug. 4, 2025) (quoting *Ravina v. Columbia Univ.*, 16-CV-2137, 2019 WL 1450449, at *11 [S.D.N.Y. Mar. 31, 2019]). "'Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration.'" *Lee*, 2025 WL 2208856, at *4 (quoting *Duarte*, 341 F. Supp. 3d at 319).

"'Significant or substantial emotional distress claims . . . consist of more substantial harm, usually evidenced through medical testimony or documentation.'" *Lee*, 2025 WL 2208856, at *4 (quoting *Manson v. Friedberg*, 08-CV-3890, 2013 WL 2896971, at *7 [S.D.N.Y. June 13, 2013]); *see also Ravina*, 2019 WL 1450449, at *11 (noting that significant emotional distress claims "are based on more substantial harm or more offensive conduct, [and] are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other corroborating witnesses"). The Second Circuit has recognized that "awards ranging from $50,000 to $200,000" have generally been found to be supported for "significant" claims based on "more substantial harm or more

17

offensive conduct," "although awards of up to $500,000 may also be upheld under some circumstances." *Qorrolli*, 124 F.4th at 126.

Contrary to Defendant's argument, the evidence in this case shows that it does not belong in the "garden variety" category. Plaintiff proffered medical evidence from her treating provider, and multiple other lay persons (specifically various coworkers and her husband) provided testimony in addition to her own, all of which described her injuries in more than vague and conclusory terms. Further, the evidence pertaining to Defendant Miller's actions reasonably can be construed as documenting more offensive conduct than would generally be present in a merely "garden variety" case. Instead, this case more appropriately falls within the "significant" category, which, as noted above, can reasonably encompass an award of $200,000 in an appropriate situation.

Defendant Miller, acknowledging that this might perhaps be the Court's opinion, cites a handful of selective cases in an effort to convince the Court that $200,000 is simply too high for this sort of claim. Yet the fact that other juries may have awarded lower amounts in different cases is meaningless without a detailed assessment of the evidence presented at trial in each of those cases. The primary consideration is not what awards have been granted in other cases, but what the evidence was in this case. *See Port Auth. Police Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York and New Jersey*, 681 F. Supp. 2d 456, 469-70 (S.D.N.Y. 2010) ("Comparison to similar cases can help illuminate whether an award is unconscionably high, but the award in a particular case must be seen in light of the facts and circumstances of that case.").

At the trial, Plaintiff Gallagher testified that the sexual comments began in approximately mid-2015, grew more frequent in 2016, and "got really intense" in 2017 until July, after which

she had no more contact with Defendant Miller at the Family Court.  (Dkt. No. 260, at 77-87.)
The comments that Plaintiff Gallagher should be satisfying Defendant Miller's sexual needs
occurred "a lot" throughout 2016 and became "a daily thing" in 2017.  (*Id.* at 88-89.)  Plaintiff
further testified that other incidents occurred in that first half of 2017, including threatening to
put her and Plaintiff Kachadourian in "cement boots," showing Plaintiff Kachadourian pictures
of a nude court employee, engaging in conversations about sexual conduct or attributes of
various court employees either to Plaintiffs or in their hearing, and telling both Plaintiffs that
Plaintiff Gallagher needed to perform sexual services for a state senator whose phone number
Defendant Miller wanted to obtain.  (*Id.* at 88-92.)  This testimony as a whole, in conjunction
with that of Plaintiff Kachadourian, shows that Plaintiff Gallagher was subjected to the relevant
conduct for approximately two years, with a significant escalation for approximately six months
in 2017.

Contrary to Defendant Miller's characterization, the testimony provided reasonably
permitted the jury to conclude that the conduct was neither fleeting nor sporadic, and the length
of time a plaintiff is subjected to discriminatory conduct is one consideration when assessing
whether the evidence supports a jury's verdict related to damages.  *See Phillips v. Bowen*, 278
F.3d 103 (2d Cir. 2002) (in which the Second Circuit upheld district court's denial of motion
seeking remitter of award of $400,000 in compensatory damages where the plaintiff presented
evidence of retaliation over the course of a few years during which she was not provided the
required equipment, was denied assistance on a few noted occasions from coworkers and/or
supervisors, was "shunned" by her coworkers, and was subjected to comments and criticism
from other officers, causing her emotional distress with physical health manifestations); *Ravina*,

2019 WL 1450449, at *13 (granting remittitur of $750,000 compensatory award and reducing it to $500,000 in case where sexual harassment occurred over approximately two-and-a-half years, after which the defendant retaliated against her related to their shared work when she complained to administration about his conduct, all of which caused emotional injury, although this award also included reputational damages).

As to Plaintiff Gallagher's emotional injuries, she testified to experiencing various issues, including vomiting after Defendant Miller told her she needed to provide sexual services to the state senator, difficulty focusing, anxiety, depression, inability to sleep, nightmares, severe and frequent panic attacks, not wanting to get off the couch, and a general inability to function specifically in 2019 due to stress. (Dkt. No. 260, at 93; Dkt. No. 261, at 14, 24-25, 29, 41.) She took a disability leave from her job because of these issues in April 2019 and did not return. (Dkt. No. 261, at 14.) She testified that although she did have preexisting anxiety and was seeing a counselor as early as 2014 because of that, her issues became worse because of Defendant Miller's conduct, and that she still sees both a counselor and a psychiatrist, the latter of who prescribes her medications and diagnosed her with posttraumatic stress disorder in April 2019. (*Id.* at 82, 85, 86-87, 110.)

Plaintiff Gallagher's testimony is not the only evidence presented related to her emotional injuries. Ms. Singer testified that, in her conversations during which Plaintiff Gallagher would tell her about Defendant Miller's conduct, Plaintiff Gallagher was "definitely" and "genuinely" nervous. (Dkt. No. 261, at 246.) Plaintiff Gallagher's husband testified that she seemed happy when she began working for Defendant Miller in Family Court in 2015, but that by 2016, she would be crying, sad, and upset after work, including frequently crying in the car when he came

to pick her up. (Dkt. No. 261, at 276.) Mr. Gallagher further testified that Plaintiff Gallagher became less social and did not want to leave the house, was afraid for her safety and asked him to install security cameras at their home, became very sad and did not want to see anyone (particularly anyone in the Miller or Balles family, with whom they had previously been on good terms), and that, on the day when Defendant Miller told her she needed to perform sexual services for the state senator, she came out of work sobbing, worse than the other days. (*Id.* at 275-78.) Additionally, Ms. Vandeburg testified that Plaintiff Gallagher complained to her about Defendant Miller's conduct two or three times per week, during which she was upset, anxious, crying, and reported that she didn't feel safe. (Dkt. No. 262, at 195.) Ms. Vandeburg also testified that she observed Plaintiff Gallagher having panic attacks that required her to leave work to seek medical attention on two occasions. (*Id.* at 196.) This testimony from multiple sources corroborates Plaintiff Gallagher's own testimony regarding her manifestations of emotional distress.

Lastly, the testimony of Dr. Bashkoff, although not favorable to Plaintiff Gallagher in general, provides further details about Plaintiff Gallagher's medical treatment. For instance, she noted that Plaintiff Gallagher has been diagnosed by various therapists and a psychiatrist with posttraumatic stress disorder (with paranoia and agoraphobia) and major depressive disorder, and that she is taking medication prescribed by her psychiatrist. (Dkt. No. 262, at 86-88, 91.) Dr. Bahskoff noted that although Ms. Fassett (who was Plaintiff Gallagher's therapist from approximately 2014 until the second half of 2019) assessed Plaintiff Gallagher as beginning to improve related to certain "cognitive distortions" by August 2019, her current therapist Ms.

Bronson continued to want to meet with her weekly after taking over her care in later 2019.[2]  (*Id.* at 87-88, 92.)  Further, Dr. Bashkoff noted that Plaintiff Gallagher reported being terrified, scared, and fearful about threats made in 2018, that she presented as mildly anxious during the assessment (which Dr. Bashkoff assessed to be her "baseline") including because Defendant Miller's attorney was seated behind her during the evaluation, and that she reported that she would vomit from the stress of seeing Defendant Miller.  (*Id.* at 73-74, 115, 123-24.)  That Dr. Bashkoff disagreed with and discounted the diagnoses and opinions of Plaintiff Gallagher's providers (specifically Ms. Bronson and her psychiatrist) does not negate the fact that those providers' findings represent evidence corroborating some of Plaintiff Gallagher's complaints related to her emotional injuries.  The jury was not obligated to accept Dr. Bashkoff's testimony over other evidence, and, to the extent the Court has the ability to render its own credibility determinations on a Rule 59 motion, it does not find Dr. Bashkoff's testimony to be particularly credible.  As a result, although there was no expert witness for Plaintiffs in this case and no direct testimony from any of Plaintiff Gallagher's treating providers, Dr. Bashkoff's own testimony provides at least some evidence that (a) Plaintiff Gallagher was receiving consistent mental health treatment throughout the relevant period, (b) her treating physicians found various medical diagnoses to be warranted based on her functioning after Defendant Miller's conduct began or occurred, and (c) Plaintiff Gallagher displayed mental health symptoms, particularly anxiety.

Taken together, all of the above evidence indicates that this case is, as stated previously, not merely of the "garden variety."  In sum, Plaintiff Gallagher was subjected to frequent and

---

[2]    Ms. Bronson's treatment notes were also submitted into evidence.

escalating comments pressuring her to perform sexual service for Defendant Miller (with at least

six months where she testified this occurred daily) for approximately two years.  In 2017 in

particular, he engaged in other sexually charged conduct for which Plaintiff Gallagher was

present or was at the very least made aware (including directing her that she needed to perform

sexual services for a state senator, making threats against Plaintiffs' lives if they betrayed him,

and yelling at Plaintiff Gallagher on multiple occasions and restricting who she was permitted to

spend time with).  There were also credible threats made against Plaintiffs' lives in 2018 by

individuals who had an association with Defendant Miller, which Plaintiff Gallagher testified

caused significant mental distress and anxiety.  It was undisputed that Plaintiff Gallagher took a

disability leave of absence in April 2019 because of the emotional distress she was experiencing

and that she never returned to work before her position was terminated in December 2021.

Further, although she testified that she had been working for the Broome County Department of

Social Services for approximately a year-and-a-half at the time of trial (i.e., July 2025) there is

no evidence to indicate that she was employed between April 2019 and when she began that job.

(Dkt. No. 260, at 70.)  Based on the length, frequency, and nature of the conduct involved here,

and on the evidence related to Plaintiff Gallagher's emotional injuries (which, again, have been

shown by more than her own testimony), the Court does not find the amount of compensatory

damages awarded by the jury to be conscience-shocking or so unmoored from the evidence as to

indicate the jury relied on sympathy rather than the evidence presented, despite the fact that it is

at the higher end of the generally accepted range.

  For all of the above reasons, the Court also denies Defendant Miller's motion for a new

trial or to alter or amend the judgment.

**C.      Whether Plaintiff Gallagher's Attorneys Are Entitled to Attorney's Fees**

After careful consideration, the Court answers the above question in the affirmative, but finds that the amount requested should be reduced for the following reasons.

As an initial matter, the hourly rates requested by Plaintiffs' counsel are clearly above what has been considered to be reasonable in the Northern District of New York.  Just a few months ago, a court in this district noted that "'[a] review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250-$350 for partners; $165-$200 for associates; and $80-$95 for paralegals, legal assistants, and other paraprofessionals.'"  *Malik v. Ayuryoga, Inc.*, 25-CV-0076, 2025 WL 2029237, at *5 (N.D.N.Y. July 21, 2025) (Nardacci, J.) (quoting *UFCW Local One Health Care Fund v. Greene Great American*, 23-CV-1441, 2025 WL 1506163, at *5 [N.D.N.Y. May 27, 2025] [Sannes, C.J.]).  Plaintiff's requested hourly rates are well in excess of these generally accepted reasonable rates.  As a result, the Court finds that reductions are warranted as follows: a rate of $350 for work performed by Attorney Dreyer (in recognition of his significant trial experience); $165 for Attorney Davis (in light of the documented fact that he graduated from law school in 2024); $180 for Attorney Owens, Attorney Mix, and Attorney Friedman (in light of the fact that no specific information has been provided about their experience); and $95 for Paralegal Fereday.  With these adjustments, the total amount (based on the hours asserted by Plaintiff Gallagher) is automatically reduced to $184,621.50.[3]

As to the fact that, as Defendant Miller highlights, Plaintiff Gallagher succeeded on only one of the multiple she asserted against him in the Complaint, the Supreme Court has indicated

---

[3]      The calculation breakdown for this total is as follows: $58,800.00 for Attorney Dreyer; $24,436.50 for Attorney Davis; $53,424.00 for Attorney Owens; $927.00 for Attorney Mix; $37,800.00 for Attorney Friedman; and $9,234.00 for Paralegal Fereday.

that, when considering whether such a situation merits the reduction of an award of attorney's fees, courts should ask two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded,? [and] Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The Supreme Court has observed that 'the most critical factor' in a district court's determination of what constitutes reasonable attorneys' fees in a given case 'is the degree of success obtained' by the plaintiff." *Delshah 60 Ninth, LLC v. Free People of PA LLC*, 20-CV-5905, 2025 WL 2412029, at *9 (S.D.N.Y. July 31, 2025) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 [1992]). This involves giving "'primary consideration to the amount of damages awarded as compared to the amount sought.'" *Farrar*, 506 U.S. at 114 (quoting *Riverside v. Rivera*, 477 U.S. 561, 585 [1986]).

Here, the claims on which Plaintiff Gallagher (and, indeed, Plaintiff Kachadourian) did not succeed are all generally based on the same set of facts, i.e., the conduct of Defendant Miller toward Plaintiffs and others at the Family Court, with the notable exception of the retaliation claims against Defendant Unified Court System which are premised more on Defendant Unified Court System's response to being informed about Defendant Miller's actions.[4] Contrary to Defendant Miller's assertion, the fact that Plaintiff did not succeed on these other claims is not alone dispositive. As the Supreme Court indicated in *Hensley*, compensation on work expended on unsuccessful claims should only be disallowed if such claims were unrelated to the claim on

---

[4]    The Court notes that these unrelated claims would not form the basis of a reduction here for limited success because Plaintiff Gallagher's contemporaneous time records omit most of the work performed related to the claims against Defendant Unified Court System (with some exceptions that will be accounted for below).

which the plaintiff was successful, but that in cases where the claims for relief "involve a common core of facts [or are] based on related legal theories," such a lawsuit "cannot be viewed as a series of discrete claims," and the court should instead "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 434-35.

In terms of the degree of success achieved (which the *Farrar* court stated was the most critical factor in the relevant assessment), Plaintiffs did not allege any specific amount of damages in their Complaint, but the Court sees no reason to believe that the amount of compensatory damages awarded by the jury in this case ($200,000) as well as the award of punitive damages would suggest that the amount of attorney's fees noted above (reduced to reflect reasonable hourly rates in this district) would be excessive in terms of the degree of success obtained.  The fact that the jury found that the evidence warranted the imposition of punitive damages in addition to a relatively large award for compensatory damages indeed strongly suggests that Plaintiffs' attorneys were highly successful related to Plaintiff Gallagher's hostile work environment claim.[5]  This is true, again, despite the fact that she pursued a number of other claims that were not successful.  The Court therefore finds no basis for reducing the award further based upon degree of success obtained in this action.

As a final matter, the Court has considered Defendant Miller's other various arguments as to why the number of hours expended by Plaintiffs' counsel is unreasonable.  After carefully

---

[5]      Indeed, the typical case in which courts reduce an award of attorney's fees based upon a disproportionate degree of success involves a situation where the plaintiff prevails but is awarded only nominal damages and the outcome of his or her claim does not achieve some significant public purpose.  *See, e.g., Willis v. Onondaga Cnty Sheriff's Dep't*, 04-CV-0828, 2010 WL 3338819, at *3-4 (N.D.N.Y. Aug. 24, 2010) (Suddaby, J.) (collecting cases).

reviewing these arguments and the contemporaneous time records submitted by Plaintiffs' counsel, the Court finds that a 20-percent reduction is appropriate to account for various entries utilizing block-billing, claiming duplicative work, or otherwise encompassing tasks that are non-compensable for various reasons (which appear to constitute approximately 186 of the 928 hours claimed).

For all of the above reasons, the Court grants Plaintiff Gallagher's motion for attorney's fees and awards such fees in the amount of $147,697.20.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Miller's motion for judgment as a matter of law, or, in the alternative, for a new trial or alteration or amendment of the judgment (Dkt No. 267), is **DENIED**; and it is further

**ORDERED** that Plaintiff Gallagher's motion for attorney's fees is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Dreyer Boyajian LLP is awarded attorney's fees in the amount of $147,697.20.

Dated: December 30, 2025
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge